With our first matter of the day, which is the United States of America versus Roy Brewley. And I believe we have Mr. Payton for the appellant. Mr. Payton. Good morning, Presiding Justice. Good morning. My name is Leslie Payton. I represent the appellant, Mr. Roy Brewley, in this matter. Briefly, let me discuss why we're here. There was a trial in which Mr. Brewley was one of the defendants. Seven defendants stood trial for various drug offenses. And we believe that the court made several errors in the trial proceedings. And that is why we're here today. Your Honor, before I further start my argument with respect to these cases, I would like to reserve five minutes for rebuttal. Granted. Thank you. My first issue, did the trial court abuse its discretion when it did not properly hold the jury? The appellant in this case is relying upon... Let me ask, Mr. Payton, because obviously oral argument, appellate oral argument, has a limited amount of time prescribed. And while we don't religiously adhere to the clock in this court, I would ask you if you really think that's your strongest issue. Six, I think, were originally iterated. Your Honor, I believe that the catalyst for the other issues emanates from this issue.  And I say that because of the number of defendants in this case wherein the jury was polled. There was a jury number six that did not decide whether her decision would be guilty or not guilty with respect to the appellant. Explain to me, Mr. Payton, how does this drive ultimately the decision? You say this drives the ultimate decision, but the ultimate decision here comes down to manifest necessity, right? That is correct. So how does whether the judge pulled the jury initially or only after some teeth pulling, in your view, how does that make a difference on the issue of manifest necessity? Mr. Payton, you've now heard from two of us suggesting essentially the same thing. Let me go straight to the issue. The trial judge entered in order a mistrial in this case. Now, there was no basis for the judge to enter a mistrial in the view of the appellant. What the judge should have done in the view of the appellant, because juror number six, there was never any unanimous decision with respect to his guilt. Sure, but you'd agree, wouldn't you, that whether a lack of unanimity is the basis for a mistrial as well as perhaps a basis for an acquittal? The lack of unanimity isn't dispositive of whether mistrial was appropriate or acquittal was appropriate, right? I would agree with the court with respect to that analysis, Your Honor. The question becomes, at least in my mind, I'll speak for myself, the question is the manifest necessity question. The thing I'm interested in is, given what had transpired to that point, there was a lot of back and forth in that transcript, a lot of discussion about whether it was appropriate to send things back to the jury or not, and several defense counsel objecting. At the end of that discussion, though, there's a decision by the trial judge, okay, I'm going to send them back, I'm going to tell them to go back, even though your predecessor in representing Mr. Brewer said, don't do that, don't do that, and send them back. They still come back without unanimity. At that point, even though the record isn't clear on it, was it appropriate for the district court judge to be thinking, if I send them back, they're still going to come back that long? I've sent them back, what's the purpose? Does the record reflect, even though he didn't use the manifest necessity test as something he articulated, does the record reflect that there was just no purpose to sending them back to deliberate anymore? The record reflects that he simply did not believe that there would be an unanimous verdict if he sent them back. That's how I view the record, the transcript. If that's true, doesn't your client lose? Well, no, he doesn't lose. What my client is demanding is a new trial. My client is demanding that the judge should have entered a dismissal, which he did. He said, the charges. Excuse me, you said your client is demanding a new trial? Yes. I'm sorry. No, I'm sorry, a reversal. I'm sorry, a reversal. Now, as I recall the transcript, because the transcript is voluminous in this case, what the trial judge did, he dismissed the charges against the appellant. That's what he did. But then, in fairness, immediately thereafter called your client back into the courtroom to say, oops, made a mistake. OK, if judge says, OK, oops, I made a mistake, Mr. Brewery. And once he did that, I mean, let's assume that there was no manifest necessity here. Let's assume that you are correct and that Judge Giles did not have the indicia that would lead to a determination of manifest necessity. And notwithstanding that, he makes the obvious error, as it appears here, of discharging your client at first. Yes, he did. And your predecessor and your client are immediately at the door of that courtroom. Correct. They didn't hang around to see if he might change his mind one moment. It was a very wise exit. Exactly. Very wise indeed. And then upon return, your predecessor, in appearing before Judge Giles, did have an opportunity to speak, did he not? Yes, he did. In fact, he had the opportunity to make what I would characterize, at least, as a rather ironic response to the effect that we preferred the other ruling, Your Honor. Right? Yes. Words to that effect. Words to that effect. He said that he would prefer the other ruling, which is a dismissal. Well, but they also, I think on page 39 of appendix 3, after the district court declares a mistrial, makes it clear, rather than objecting, your predecessor said, yes, Your Honor. That's not any objection at all. It seems to be the same. Well, as a criminal trial attorney myself, sometimes things are said on the record which you really don't intend as meaning. Let's begin with what we can probably agree on, and that is, he did have opportunity, and plenty of opportunity at that point, to interpose an objection once it was clear that what Judge Giles had in mind was a mistrial and not a discharge of the defendant. Correct? Your predecessor had plenty of opportunity to interpose objection. I would respectfully say I don't believe so from my reading of the transcripts. He couldn't have said, I object, rather than, I prefer the other ruling? I did not. Well, I think when he said, I prefer the other ruling, I think the court can couch that in the objection to a mistrial. And if you read the transcript in its entirety on this issue, I think you can read counsel's stating that I prefer the other order of dismissal as an objection to a mistrial. I mean, you can read that, you can read that into, you can interpret that from the cavalcoy that was going on between counsel and the court. I believe you can do that. But Mr. Rivers, then again, when he has the opportunity to speak and does speak, says, yes, your honor, can we be excused? He doesn't again use the opportunity to clearly articulate objection. Well, your honor, I'm not taking apart each page of the transcript. I'm reading the whole transcript on this issue. And it would seem to me that Attorney Rivers did, in fact, even though he didn't say, I object to the mistrial being entered. Assume we were to accept your reading that it was an objection. Please give us, if you would, your best shot at why there was not manifest necessity here. I think, if I understand your argument right, your argument is that there was no need for a mistrial at that point. It was no need for a mistrial. I think the court was aware that there were seven defendants. One juror came back with a not guilty with respect to Mr. Brulee. I think that was very clear. And I believe that with that non-unanimous verdict with respect to Mr. Brulee, it clearly shows that the trial judge should have dismissed the charges against him. All right, we'll have you back on rebuttal. Thank you very much, Mr. Payton. Good morning, Your Honor. Delia Smith on behalf of the United States. Good morning. If we are to address what I believe the court is impressed as the most important issue in this matter, as to whether or not the trial judge in this matter, Judge Giles, acted properly in light of all the issues that he was confronted with during this trial. Can I ask you a question right off the bat? Are you arguing that there was manifest necessity for mistrial? Your Honor, what we're arguing is that there was a motion for mistrial by the defendants and that this defendant joined in that motion. How? How did he join? Your Honor? Please point us to the record as to how he joined. The record? Yes, sir. If we were to look at the transcript, where on page request for mistrial is made in the joint appendix, starting on page 40, where attorney Brush. Here's the quick thing. Yes, sir. In your brief, you cite pages 40 to 44, and I've been over those things, and I could have dismissed it, but I don't see anywhere where Mr. Rivers says, I'm in on that. Well, Your Honor, if I could point the court to the particular area of the transcript where the court inquired of all defendants, I assume you joined in this motion, given that in the beginning of the trial, the defendants had agreed. What motion? Two problems with that. Yes, sir. The court's statement is immediately following Mr. Brush saying, I want to be heard with respect to release pending appeal. That's what the court says, just for the record. And then the court says, I assume all defendants joined, and then one other counsel says, yes, Your Honor. But even at that point, there's nothing for Mr. Rivers to say he even joins the motion for release pending appeal. So where do you get that there was a motion by Mr. Rivers on behalf of Mr. Brush? Because the defendants agreed from the inception of this jury trial that every objection is an objection on behalf of all defendants. Where does that agreement appear in the record? Well, Your Honor, I don't have that particular language. That's a pretty critical omission, isn't it? If your entire case comes down to that, and you're relying on it, and we can't find it in the record. Well, Your Honor, the entire case does not come down to that. But we submit that the language that is there speaks to the joinder of that particular mistrial. I understand your position, though, to be entirely based upon the joinder of all defendants in all objections. Wasn't that what you stated? Yes, it was. But it's not the only issue, Your Honor. Well, I know it's not the only issue that's been raised in this case. But we actually began by Judge Chigaris asking, I believe, about manifest necessity, and you didn't answer that. Well, and I would like an opportunity to do so. With the manifest necessity, what is reflective of this record is a juror who adamantly, belligerently refused to cooperate, to perform her duties as a juror, refused to proceed with any level of deliberation, and insisted that she must speak to the court. I have never seen a juror behave the way Juror Sixth behaved throughout this proceeding. Where is that in the record? Where is it in the record that she was belligerent and refused to perform her duties? Well, Your Honor, her behavior is not reflected in the record. It's just how she behaved in front of the entire party. Those were not words that were spoken by the juror. It's her behavior. Ms. Smith, we're an appellate body. We've only got one opportunity to deal with this, and it's got to be on the record, right? I assume you would agree that we can't take your representation of what you thought her behavior was as a basis for decision in this case, right? I agree, sir. But what you do have is— So point us to the record. Where in the record is there a foundation for saying it was a manifest necessity to declare this a misconduct? That's what we've got to do. Okay. If the court would— Your Honor, discussion regarding the verdict as to Juror Six begins on the Joint Appendix, page 28. On page 28 of the Joint Appendix. That's where Juror Six comes back and says she hasn't reached a unanimous verdict. Yes, Your Honor, and demands that her verdict be changed, that she was coerced into agreeing with the rest of the jurors, in that she will not deliberate as long as her deliberations included any counts, Counts 1 and Counts 8, which included Mr. Roy Broody. Okay. What are we to take from that other than the fact that a juror, at least on the face of this, in good faith, can't vote the same way the other jurors do? Well, Your Honor, the judge is faced with a decision where a juror has stated that she will not continue any deliberations regarding this particular defendant. All right. With that in mind, what alternatives, then, did Judge Giles consider to a mistrial? Faced with that reality as you have characterized it. And I got to say, I'm sorry, Judge Smith, I have to do that. You got to point me to where she says, I won't deliberate anymore, because I don't know. Where are you getting that? Well, Your Honor, if we're looking for the words, I will not deliberate, then it's not the words, I will not deliberate. It's that the juror, Juror 6, having been sent back repeatedly by this court, adamantly is stating in her behavior and her refusal, even in her vote, having been polled individually. So it's not in the record. That's, it's, what Judge Jordan was looking for in response to your comment is not in the record. You're conceding that, right? Well, what I'm stating, Your Honor, is that she, having been individually polled, that is in the record. Juror 6 is indicating that her verdict has to be changed. The notes, even from the dialogue that comes from the judge in the transcript, the judge is speaking on behalf of the juror based on the note that he received. And that is in the transcript. Well, can we move ahead, maybe, if that's all right? I mean, where, is there anywhere in the record where the court considers, you know, factors bearing on the finding of manifest necessity? Did you give the parties a chance to weigh in on it? Well, Your Honor, that, I will concede that the court, having, first, what the court did was dismiss the charges and release the defendant. And the government objected that the court didn't, based on what he was, what Juror 6 was doing, that his only option was simply to... And fortunately, that's one matter that is clearly apparent from the record. Yes, sir. And when Mr. Rivers returned to the courtroom, Your Honor, at no time did Mr. Rivers say, I object to a mistrial. He stated, I prefer your earlier ruling. All right, Ms. Smith, I now have to confess that I'm completely confused about what your position is. We've gone, we've alternated, we've gone from questions about manifest necessity and sometimes not had answers to them. Now you're to the point where there is no objection, which becomes relevant to an issue of consent if we were to assume a lack of manifest necessity. What is the government's bottom line position here? Do you concede a lack of manifest necessity so that you're suggesting this panel should look to the issue of consent? Your Honor, we are arguing that if the court deems that the issue here is manifest necessity, that notwithstanding the trial judge's lack of protecting the record by stating and enumerating every element that is required for manifest necessity, that what the court was faced with is an unusual situation of a juror refusing to test, refusing to return any verdict as to one defendant, the defendant or the appellee, the appellant here. I understand you're arguing the alternative, if there's no manifest necessity, we'll go to consent. Yes, sir. What we still haven't heard is the answer to my first question, which is does the government state that there is manifest necessity to declare mistrial? Your Honor, we would argue that as far as the elements of manifest necessity, we would argue that the issue that satisfies the manifest necessity requirement is that we looked to the juror's conduct and her refusal to testify, and the judge being faced with this situation decided, having returned her and the entire body for deliberation, that repeatedly this juror continued to hold the same position that she could not return a verdict against this defendant. So as far as the manifest necessity argument is concerned, we would argue that the court was faced with— When you say repeatedly, Ms. Smith, we're talking twice, right? Twice, yes, Your Honor. So they're sent back once, and then, in fact, they're only sent back—she's only sent back once during number six, right? Yes, sir. So repeatedly is really sent back once, but in the record, right? The initial deliberation and then they were returned, yes. Is there any waive or feint or attempt at an Allen charge here, any statement that, look, go back, try again, good faith, et cetera, et cetera? There's nothing like that, is there? Other than the court's instruction to the jury that the jury should return, yes, if I can point the court to the transcript. Yes, Your Honor. If I can point you to— I mean, we all know what an Allen charge typically looks like. Yes, sir. Is there anything that looks like the traditional Allen charge given here? Not entirely, sir. I do agree that it is not—what Judge Giles did is instruct the jury to return to its deliberations. And he did read to them the elements of the 841 conviction—I'm sorry, the statutory requirements for conviction as to conspiracy and possession. And the record shows that at least Judge Giles thought, although it's hotly disputed by defense counsel on the transcript, Judge Giles thought that juror number six had stated that Mr. Brule was guilty and had signed off on Mr. Brule being guilty and then later said, no, I didn't think he was guilty. So juror number six actually vacillated on the record, right? Yes, sir. Okay. So if juror number six has gone back and forth and the judge has sent them back once with no Allen charge, how do we get from there to manifest necessity? Take us on the route. Again, Your Honor, apart from what the record does reflect, which is the insistence deliberate by this particular juror not to deliberate in good faith as to Mr. Brule, that is all that the record has. Ms. Smith, let me go back to what I tried a little while ago. Let us assume for purposes of argument that this panel determined that there was no manifest necessity. Now, if that's the case, the government can win only if we can determine that there's consent here, right? Explicit or implied. Please explain to us how we might determine that consent occurred here on the part of Mr. Brule. By looking at the actions of counsel. Your Honor, when the Mr. First of all, even though the court, your honors may not be convinced that the motion that is joined is in fact the motion for mistrial that was initially made by co-counsel. The possession of the government is that that was in fact a jointer. Secondly, when it comes to the fact that the defendant was released and returned and was given ample, was given that opportunity to object, he was told by the court, well, I cannot dismiss the court, the charges. I have acted erroneously, but what I will do here is declare a mistrial. At no time did attorney rivers indicate that, again, I object to these actions. Isn't, isn't, Ms. Smith, isn't the statement we liked your earlier ruling. I mean, I grant you, you could read that and say it was, oh, that was a throwaway quip, a joke. But Mr. Payton's arguing and the record arguably will bear this interpretation that that is an objection. That's a statement that we don't like. We don't believe that. The government's position is whether it's expressly or impliedly, whether expressed or implied, the defendant consented to the actions of the court, which was the declaration of the mistrial. This is not a freshman defense attorney. Certainly this attorney knows what an objection is. He knows that a mistrial and his consent. In fact, all the attorneys in this rather hotly contested trial knew how to articulate objections. Yes, sir. And it did so frequently. And we believe that once it's expressed or implied by attorney rivers, at no time did attorney rivers seek, your honor, to object to the actions of the court. And it must be considered a consent because it is an objection. It cannot be implied. That is something that the court should determine did not exist because an objection has to be expressed. However, consent can be implied because the case law in this circuit says so. That whether expressly or impliedly made by a defense attorney, his actions can be deemed to be consensual when it comes to the issue of a declaration of a mistrial. And that is what occurred here. At no time did attorney rivers indicate that he objected with the actions of the court. He understood that his acquiescence would result in the retrial of his client. He made no objections. Not only did he not make objections verbally, he didn't do it in writing. How about, I mean, he moved for acquittal. He didn't move for a mistrial when the jury came back without unanimity. The discussion is all about acquittal. Yes, Your Honor, he can move for acquittal, but there was no grounds for acquittal, nor did he make any arguments. And the court should not infer that an acquittal of Rule 29 should somehow be interpreted as an objection to a mistrial. It's just too far a reach. He understood that he had to make a Rule 29 motion. That is required. He has to make a Rule 29 at every stage of completion of this trial. So he was simply acting in accordance with the rules. But to infer or to suggest that that is tantamount to an objection for a mistrial is just too broad and is not supported by the facts here. All right, thank you very much, Ms. Smith. Mr. Payton, rebuttal. Thank you again, Your Honor. First, briefly, I would like to just state that in order for this court to reach a decision, I believe, in my view, that trial counsel did not consent to a mistrial. It's very clear on the record. Doesn't it strike you, though, Mr. Payton, given an attorney's ethical obligation to represent a client with zeal, given a trial attorney's knowledge of both the need to make objection and how to properly state an objection, that there is the definite potential for gamesmanship in this kind of a situation? By that, I'm suggesting that where an attorney has an obligation to object to the declaration of a mistrial, and knowing that he does not want a mistrial on behalf of his client, but rather wants to have an acquittal instead and is willing to take his chances, that the kind of response that we see from Mr. Rivers is at the very least equivocal? And don't you think that there's the possibility of counsel being able to game the system simply by choosing not to state what can be seen as clearly or explicitly an objection? Your Honor, with all due respect, I don't believe that Tony Rivers was engaging in any gameship. Please understand that I'm not suggesting he was. We deal with rules, and if we were to decide this case by way of a precedential opinion, we have to declare or at least rely upon a rule. And I'm concerned about the implications here of the kind of statement that Attorney Rivers made, for whatever reason. Well, Your Honor, and I know, and I just want Your Honors to review the record, but as criminal trial defense attorneys, many times you're in the heat of trial. You're trying to represent your client zealously. And certain things you say, Judge, I'd rather take the dismissal. You know, in the back of your mind, you believe that that's your objection. And I believe that's what happened in this case. And that is why when I wrote this appeal, I included almost the entire trial transcript so that this court could receive the full flavor that was going on in the courtroom. And I believe the transcript is reflective of that. Is there anything, Mr. Pate, other than that comment, which, again, can be viewed as nothing more than sort of a throwaway quip, like, we like what you did before. Is there anything other than that which supports your assertion that what was being voiced was an objection to the entry of a mistrial, that Judge Giles should have known it? The only thing that I can refer to is Attorney Rivers' request for acquittal, the Rule 29 motion. That's the only thing. I can only rely upon the record. Well, can I ask you a question? When he left, I think it's pretty clear from the record, by the time he left court that day, after being called back, he knew he was going to be facing a retrial, right? I don't believe the record reflects that. He knew that when he entered back into the courtroom that the trial judge was going to enter a mistrial. I don't believe that from the transcript. So you're saying he didn't have an idea he was going to be retried? No. When he left the courtroom? No, I don't believe so. So when he asked, finally, can we be excused, and Judge Giles responded, yes, sir, you may, he did know that a mistrial had been declared and that a new trial date would be scheduled, right? I believe so, from the transcript. Did he ever file a piece of paper of any kind post that event, suggesting otherwise? No, he didn't. Thank you very much. Thank you, Mr. Payton. Thank you, Ms. Smith. We'll take the case under advisement.